Cecilia M. Romero (9570)
Nathan Archibald (14855)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Tel: (801) 799-5800
Fax: (801) 799-5700
cmromero@hollandhart.com
narchibald@hollandhart.com

*Attorneys for Plaintiff LifeVantage Corporation*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LIFEVANTAGE CORPORATION, a Colorado corporation<br><br>Plaintiff,<br><br>v.<br><br>ELISA GONZALES, an individual; NANCY ESQUIVEL, an individual; CRISTINA GODOY, an individual; DANIEL ETHINGTON, an individual; and CLAUDINA BRENNEMAN, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 2:17-cv-01066-RJS<br><br>Judge Robert J. Shelby<br><br>**(Jury Trial Requested)** |

Plaintiff LifeVantage Corporation ("LifeVantage"), by and through its counsel of record Holland & Hart LLP, hereby asserts its claims against Defendants Elisa Gonzales ("Gonzales"), Nancy Esquivel ("Esquivel"), Cristina Godoy ("Godoy"), Daniel Ethington ("Ethington") and Claudina Brenneman ("Brenneman") as follows.

## PARTIES

1. LifeVantage is a Colorado corporation with its principal place of business located at 9785 South Monroe Street, Suite 300, Sandy, Utah 84070.

2. Upon information and belief, Defendant Gonzales is an individual who is domiciled and resides in Mexico.

3. Upon information and belief, Defendant Esquivel is an individual who is domiciled and resides in Mexico.

4. Upon information and belief, Defendant Godoy is an individual who is domiciled and resides in California.

5. Upon information and belief, Defendant Ethington is an individual who is domiciled and resides in Arizona.

6. Upon information and belief, Defendant Brenneman is an individual who is domiciled and resides in California.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1332(a)(1) by virtue of diversity of citizenship. The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The agreements referred to in this Complaint to which Defendants are parties provide that personal jurisdiction and venue for any dispute arising out of or relating thereto are proper exclusively in the state and federal courts located in the State of Utah. Jurisdiction is also proper in this forum because Defendants have transacted business in Utah and have caused damage to LifeVantage within the State of Utah.

9.     Venue in this district is otherwise proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS
### LifeVantage's Business.

10.     LifeVantage is a public NASDAQ traded company based in Sandy, Utah that sells nutraceutical and other health and well-being products.

11.     Network marketing involves a salesforce of independent sales persons. LifeVantage refers to these individuals as Independent Distributors. LifeVantage has approximately 100,000 Independent Distributors world-wide.

12.     Independent Distributors are remunerated pursuant to a compensation plan, which provides for a structured series of commissions and bonuses based upon sales volume. Independent Distributors' compensation includes commissions from their own retail sales as well as a percentage of the sales of their "downline" sales network.

13.     An Independent Distributors' downline consists of all other LifeVantage Independent Distributors sponsored by that individual, as well as all Independent Distributors enrolled by those Independent Distributors. A successful Independent Distributor may have dozens of individuals in their downline. So that distributors can monitor the success of their downline, LifeVantage generates downline activity reports that contain information such as the identity of the Independent Distributors in each downline, their positions, commissions, and their contact information (the "Downline Report").

14.     The information contained in these Downline Reports is highly confidential and is a proprietary trade secret owned exclusively by LifeVantage. This information is made available to Independent Distributors only for use in their LifeVantage businesses through a password protected site. Access to the site is terminated once a distributor leaves Life Vantage.

3

15. The highest level an Independent Distributor can attain at LifeVantage is referred to as a "Master Presidential 10" Independent Distributor.

16. LifeVantage's Independent Distributors are an essential component of its business success, who help sell products and generate revenue. Indeed, the success of LifeVantage is dependent upon an engaged and motivated field of distributors who are committed to the company and its products. LifeVantage invests millions of dollars in commissions, in training, and in motivating its distributors so that they will invest their time and effort to promote the company and its products. Actions that undermine the confidence that the distributors have in the company and its products have potentially devastating effects, both on the company and on other loyal distributors.

17. Successful Independent Distributors spend a great deal of time and effort developing their sales and marketing organizations and establishing relationship and good will with customers and their downline. In turn, LifeVantage's success and reputation are largely based on the good will created by its Independent Distributor organizations. Thus, the largest risk to LifeVantage's business model is poaching of the distributor organizations and downlines by competitors and other network marketing organizations.

18. LifeVantage is indispensable to Independent Distributors' efforts in building a downline. LifeVantage provides the highly sought after health and well-being product offerings and the forum and community that Independent Distributors need to build a successful network business. LifeVantage invests heavily in its resources used by Independent Distributors.

19. LifeVantage has been highly successful in marketing its products domestically and abroad and is ranked as one of Direct Selling News' "Global 100" network marketing companies.

### Defendants' LifeVantage Accounts.

20. Gonzalez enrolled as a LifeVantage distributor on or around November 25, 2013. She was issued LifeVantage Account Number 901699 (the "'699 Account").

21. Esquivel enrolled as a LifeVantage distributor on or around April 14, 2015. She was issued LifeVantage Account Number 1209853 (the "'853 Account").

22. Godoy enrolled as a LifeVantage distributor on or around July 2, 2012. She was issued LifeVantage Account Number 471636 (the "'636 Account").

23. Ethington enrolled as a LifeVantage distributor on or around May 18, 2009. He was issued LifeVantage Account Number 100189 (the "'189 Account").

24. Brenneman enrolled as a LifeVantage distributor on or around February 9, 2013. She was issued LifeVantage Account Number 671703 (the "'703 Account").

25. Since joining LifeVantage as Independent Distributors, Defendants had built successful businesses. Ethington attained Premier Pro 8 status, one of the highest levels an Independent Distributor can attain at LifeVantage. Gonzales, Godoy and Brenneman have all attained Premier Pro 7 status.

26. However, due to Defendants conduct in breach of their agreements with LifeVantage, LifeVantage has suspended the '699, '636 and '703 Accounts on September 6, 2017 and the '853 Account on September 8, 2017.

27. The '189 Account was terminated on May 1, 2017 by mutual agreement.

### The LifeVantage Independent Distributor Agreement.

28. When individuals such as Defendants apply to become Independent Distributors, they do so online at LifeVantage's website (http://www.lifevantatge.com).

29. Once on LifeVantage's website, the prospective distributer is presented with the option to "Join Us."

30. Once a prospective user clicks on the "Join Us" link, the prospective distributer is taken to a webpage containing the registration form that the prospective user must complete and submit in order to become a LifeVantage Independent Distributor.

31. As part of the registration process, a prospective user is required to acknowledge that he or she agrees to and accepts the terms of the Independent Distributor Application and Agreement ("the Agreement"), which provides the terms and conditions that govern the relationship between LifeVantage and the prospective distributer. This Agreement expressly incorporates the Policies and Procedures (*see* Agreement at § 9.3) (together, the "Agreements"). A prospective distributor must acknowledge that he or she has read and agreed to both. Copies of the relevant Agreements and the most recent version of the Policies and Procedures (dated June, 2017) are attached as **Exhibit 1**.

32. At the time that the Defendants became fully enrolled Independent Distributors, they agreed to the terms and conditions contained in the Agreement and the Policies and Procedures.

33. Each year, the Agreements are automatically renewed if the Independent Distributor is in good standing and their paid fees are up to date. Policies & Procedures, § 3.3 (Ex. 1). In addition, Independent Distributors are deemed to have accepted any changes to the

Agreement when they continue to purchase or sell Company products, enroll and/or accept rebates, commissions of bonuses from LifeVantage, see § 2.3.

34. An Independent Distributor is entitled to rebates, commissions, and bonuses – so long as the Independent Distributor is "active and in compliance with the Agreement" (Policies & Procedures, § 12.1 (Ex. 1)). A remedy for "[a]ny breach of the Agreement, including these Policies and Procedures" includes "[l]oss of rights to one or more bonus and commission checks; in whole or in part." *Id.* at § 14.1 (3). LifeVantage "insist[s] on compliance with the Agreement. . . governing the conduct of an Independent Distributor." *Id.* at 2.6. LifeVantage conditions all statements regarding residual income on a distributors' continued compliance and good standing with respect to their obligations to LifeVantage.

35. As part of their Agreements, Defendants agreed to avoid Conflicts of Interest, as defined in the Policies & Procedures (§ 6 (Ex. 1)). For example, although the Policies & Procedures allow Independent Distributors to "participate in other direct selling or network marketing or multilevel marketing ventures," they must adhere to restrictions prohibiting contact with other LifeVantage Distributors. The Conflict of Interest polices are intended to "[p]rotect the rights of all Independent Distributors by providing a framework within which each Independent Distributor may work in an ethical, effective and secure manner." *Id.* at § 1 (1).

36. Defendants agreed that they "shall not engage in any actual or attempted recruitment or enrollment of a LifeVantage Independent Distributor for other Network Marketing Ventures, either directly or through a third party." *Id.* at § 6.1.

37. The Policies and Procedures define a "Network Marketing Venture" as "other direct selling or network marketing or multilevel marketing ventures." *Id.* at § 6.

38. During the term of the Agreements, Defendants agreed they "may not sell, offer to sell, or promote any competing non-LifeVantage products or service to LifeVantage Independent Distributors." *Id.* at § 6.1(2)(b).

39. Defendants agreed to restrictions on communication and confidentiality of downline information. They acknowledged that the information contained in Downline Reports are "confidential and constitute proprietary information and business trade secrets and are owned exclusively by LifeVantage." *Id.* at § 7.1. Downline Reports could not be used "for any purpose other than promoting [Defendants] LifeVantage Independent Distributorship." *Id.* at § 7.1 (3). Information pertaining to downlines could not be used to "[r]ecruit or solicit any Independent Distributor . . . listed on any report . . . to alter their business relationship with LifeVantage." *Id.* at § 7.1 (4).

40. The Agreements also provides that "[f]or a period of two (2) years following the Cancellation of an Independent Distributor's Agreement, the former Independent Distributor is strictly prohibited from recruiting any LifeVantage Independent Distributor, Preferred Customer or Direct Retail Customer for another Network Marketing Venture." *Id.* at § 6.1 (1).

41. In the event the above terms are breached, LifeVantage is permitted to seek injunctive relief in a Utah court. Policies & Procedures, §§ 14.3 and 14.4 (Ex. 1). Defendants agreed that any "breach of the [Policies & Procedures] would cause LifeVantage irreparable harm" and that as a result, LifeVantage "shall be entitled, without the necessity of posting a bond or other security, to the issuance of injunctive relief." *Id.* at § 14.4.

### Defendants' Unlawful and Improper Solicitation of LifeVantage Independent Distributors

42. Starting at least on or around September 2, 2017, Defendants began a campaign to recruit current LifeVantage Independent Distributors to leave LifeVantage and join a competing multi-level marketing business.

43. Upon information and belief this competing business is owned by one or more of Activz LLC, Activz Mexico LLC and/or Activz Global LLC (collectively "Activz").

44. These Activz companies are incorporated in Utah.

45. Upon information and belief, Activz employ or are affiliated with David W. Brown, the former President and Chief Executive Officer of LifeVantage, Dr. Joe McCord, a former board member and Chief Science Officer of LifeVantage, and Ryan Thompson, a former Vice President of Sales at LifeVantage.

46. Activz has touted a product "Genome-X Activator NRF2.0" which Defendants have represented directly competes with LifeVantage's patented flagship product – Protandim Nrf2 Synergizer supplement.

47. LifeVantage has received numerous reports from its Independent Distributors of receiving Activz recruitment pitches from one or more of the Defendants.

48. LifeVantage Independent Distributor Monteserrat Ibanez Laxcurain has submitted a declaration stating that she was recruited by phone and text messages by Defendants Gonzales and Godoy. A copy of Laxzurain's declaration is attached as **Exhibit 2** herein.

49. Laxzurain's declaration states that not only are Defendants wrongfully soliciting and recruiting LifeVantage Distributors – that they are actively trying to have LifeVantage

9

Distributors copy the business records pertaining to their LifeVantage network in an attempt to solicit the whole of their downline.

50. LifeVantage Independent Distributor Mitch Lyman has submitted a declaration stating that he was also recruited by phone by Defendant Godoy. A copy of Lyman's declaration is attached as **Exhibit 3** herein.

51. LifeVantage Independent Distributor Patricia Wallace-Lizama has submitted a declaration stating that she was recruited by phone by Defendant Brenneman. A copy of Wallace-Lizama's declaration is attached as **Exhibit 4** herein.

52. LifeVantage Independent Distributor Fernando de la Peña Lopez has submitted a declaration stating that she was recruited by text message by Defendant Ethington. A copy of Lopez's declaration is attached as **Exhibit 5** herein.

53. In each case, the declarants have stated that not only were they recruited directly, but that they are aware of other LifeVantage Distributors who Defendants have also recruited, in some cases successfully. The declarants have each stated they fear Defendants actions have caused harm to their LifeVantage businesses and networks.

54. Upon information and belief, one or more of the Defendants have also participated as presenters on conference calls, marketing videos and at in person promotional events for Activz where Defendants have attempted to recruit LifeVantage Independent Distributors.

**Continuing Harm Caused by the Defendants Wrongful Acts**

55. LifeVantage's business goodwill is inextricably linked to the viability of its Independent Distributor network because those distributors are a significant source of the company's sales force.

56. There is a significant risk of a loss of momentum and a cascading effect of defections to the new company if high-level Independent Distributors like Defendants begin diverting their downline.

57. The damage caused by improper recruiting is often not fully captured by the number of people who may actually cancel their LifeVantage distributorships. Many distributors who are recruited to a competing company simply become inactive or reduce their LifeVantage purchases and activity, or they stop sponsoring other distributors and building their LifeVantage business. That damage is as severe as those caused by the actual cancellation of a LifeVantage distributorship, can be devastating for the company, and cause irreversible damage to LifeVantage's business goodwill.

58. Actions by Defendants seeking to recruit LifeVantage's Independent Distributors to join another multi-level marketing company are enormously disruptive and cause LifeVantage irreparable harm—much more so than solicitations by strangers. This is particularly true for the Defendants who, as high ranking Independent Distributors, had a highly visible status in LifeVantage's network and access to trade secret and confidential information related to numerous distributors in numerous downlines.

## FIRST CLAIM FOR RELIEF
### Breach of Contract (Conflict of Interest)

59. LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

60. Defendants Agreement with LifeVantage, including the Policies and Procedures, is a valid and enforceable contract with LifeVantage.

61. Up until the Defendants' breach of the Distributor Agreement, LifeVantage has performed and satisfied all obligations owing to Defendants under their Distributor Agreement.

62. Pursuant to the Independent Distributor Agreement, Defendants agreed not to recruit or solicit other LifeVantage distributors and employees; not to sell, offer to sell, or promote any competing non-LifeVantage products or services to LifeVantage distributors or customers; and not to use LifeVantage's confidential information for any purpose other than promoting LifeVantage.

63. Defendants have breached the above covenants by, directly or indirectly, contacting LifeVantage distributors for the purpose of recruiting and soliciting them to join another direct sales company. They have also breached the covenants by directing others to obtain, use and disclose, or by themselves, obtaining, using and disclosing confidential LifeVantange information for purposes other than LifeVantage distributor work.

64. As a result of Defendants' material breaches of contract, LifeVantage has sustained damages.

## SECOND CLAIM FOR RELIEF
## Breach of Implied Covenant of Good Faith and Fair Dealing

65. LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

66. Defendants' Agreement with LifeVantage includes a covenant of good faith and fair dealing between the parties to that contract.

67. Defendants have breached the implied covenant of good faith and fair dealing by breaching confidentiality and non-solicitation provisions in contravention of the clear intent and design of the Agreement, and by surreptitiously stacking their account.

68. Defendants have attempted to avoid their conflict of interest obligations under their Agreement with LifeVantage by subterfuge. This subterfuge is an attempt to evade their contractual duties and rob LifeVantage of the protections of the Agreement in bad faith.

69. LifeVantage is entitled to recover damages from Defendants associated with these breaches of the implied covenant.

## THIRD CLAIM FOR RELIEF
## Tortious Interference with Current and Prospective Economic Relations

70. LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

71. Defendants have intentionally interfered with LifeVantage's prospective economic relations by actively recruiting LifeVantage's Independent Distributors and causing them to do likewise.

72. Defendants know that all LifeVantage's Independent Distributors are bound by agreements not to solicit or recruit other LifeVantage's Independent Distributors to participate in

or sell other network products. In spite of this knowledge, Defendants have willfully and deliberately induced LifeVantage's Independent Distributors to violate the obligations arising under their respective Agreements with LifeVantage.

73. The means by which Defendants intentionally interfered with LifeVantage's economic relations were improper. In particular, Defendants have used misrepresentation and misappropriated proprietary information in recruiting LifeVantage's Independent Distributors.

74. As a direct and proximate result of Defendants' actions, LifeVantage has been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Injunctive Relief, Temporary Restraining Order

75. LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

76. Defendants material breach of contract and their continuing breach of the Policies & Procedures has caused, and will continue to cause, irreparable harm to LifeVantage.

77. Any legal remedies available to LifeVantage will be inadequate to compensate for the harm it has suffered and will continue to suffer as a result of the Defendants' actions.

78. The Distributor Agreement, as well as the associated Policies & Procedures, expressly provide for injunctive relief to enforce the terms of the respective agreements.

79. LifeVantage is entitled to a temporary, preliminary, and thereafter permanent, injunction restraining Defendants, either directly or through others, from recruiting or soliciting other LifeVantage distributors and employees to another network marketing venture, including, without limitation, through in-person meetings, phone calls, text messages, social media, email

solicitations, and other means, during the term of the Agreement and for a period of two (2) years from the termination date thereof or until such later date(s) as deemed just and equitable.

80. LifeVantage is entitled to a preliminary, and thereafter permanent, injunction against Defendants providing the above injunctive relief on the basis that:

    a. LifeVantage has suffered, and will continue to suffer, immediate and irreparable harm unless an injunction is issued;

    b. the threatened and ongoing injury to LifeVantage from Defendants' conduct outweighs whatever purported harm the proposed injury may cause to them;

    c. injunctive relief, if issued, would not be adverse to the public interest; and

    d. there is a substantial likelihood that LifeVantage will prevail on the merits, or this case presents serious issues on the merits which should be the subject of further litigation.

81. No security should be required to be posted, since the injunctive relief sought simply would maintain the status quo. Additionally, the Independent Distributor Agreement, as well as the associated Policies & Procedures, expressly provide that LifeVantage shall be entitled to injunctive relief without the necessity of posting a bond.

## FIFTH CLAIM FOR RELIEF
### Declaratory Judgment

82. LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

83. Defendants' Agreement with LifeVantage, including the Policies and Procedures, is a valid and enforceable contract with LifeVantage.

84. LifeVantage has performed and satisfied all obligations owing to Defendants under their Independent Distributor Agreement.

85. Pursuant to the Independent Distributor Agreement, Defendants agreed not to recruit or solicit other LifeVantage distributors and employees; not to sell, offer to sell, or promote any competing non-LifeVantage products or services to LifeVantage distributors or customers and not to use LifeVantage's confidential information for any purpose other than promoting LifeVantage.

86. Defendants have breached the above covenants by, directly or indirectly, contacting LifeVantage distributors and employees for the purpose of recruiting and soliciting them to join another direct sales company.

87. LifeVantage has relied upon the promises and representations of Defendants that they would comply with the Policies and Procedures.

88. The plain language of the Policies and Procedures provides that an Independent Distributor is entitled to rebates, commissions and bonuses only so long as the Independent Distributor is in compliance with the Agreement and that as a remedy for a breach an Independent Distributor would lose the right to one or more bonus and commission checks; in whole or in part.

89. In accordance with Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 LifeVantage is entitled to a declaration from this Court that Defendants are not entitled to rebates, commissions and/or bonuses under their Agreement with LifeVantage as of the date of their breach of the Agreement as described herein and a declaration that LifeVantage is complying with the Policies and Procedures in refusing or otherwise withholding payment.

WHEREFORE, LifeVantage prays for the following relief:

1. For proximate and consequential damages caused by Defendants' breaches of the Distributor Agreement and Policies & Procedures, the exact amounts to be determined at trial, but in excess of $75,000.00.

2. For temporary, preliminary and permanent injunctive relief restraining Defendants, either directly or through others, from recruiting or soliciting other LifeVantage distributors and employees to another network marketing venture, including, without limitation, through in-person meetings, phone calls, text messages, social media, email solicitations, and other means, during the term of the Agreement and for a period of two (2) years from the termination date thereof or until such later date(s) as deemed just and equitable.

3. For declaratory relief, including a judgment and decree that Defendants are not entitled to rebates, commissions and/or bonuses under their Agreement with LifeVantage as of the date of their breach of the Agreement as described herein and continuing, and a declaration that LifeVantage is complying with the Policies and Procedures in refusing or otherwise withholding payment.

4. For costs and attorney fees.

5. For such further relief as the Court deems just and equitable.

DATED this 22nd day of September, 2017.

        HOLLAND & HART LLP

        /s/ Cecilia M. Romero
        Bryan K. Benard
        Cecilia M. Romero
        Nathan Archibald

        *Attorneys for Plaintiff LifeVantage Corporation*

<u>Plaintiff's Address</u>:

Holland & Hart LLP
c/o Cecilia M. Romero
222 S. Main Street, Suite 2200
Salt Lake City, UT  84101

## VERIFICATION

STATE OF UTAH            )
                         )ss.
COUNTY OF SALT LAKE      )

Eric Marchant, being first duly sworn on oath, deposes and says:

That I am the Vice President of Compliance at LifeVantage Corporation and have read the foregoing Verified Complaint, and believes the facts stated therein to be true and correct to the best of my knowledge.

_____
Eric Marchant

Subscribed and sworn to before me this 21st day of September, 2017.

_____
Notary Public

PAULA J. CHAPMAN
NOTARY PUBLIC - STATE OF UTAH
COMMISSION# 685685
COMM. EXP. 10-08-2019

19

## **EXHIBITS**

Exhibit 1:   LifeVantage Policies and Procedures (dated June, 2017) and Primary Applicant Documents
Exhibit 2:   Declaration of Monteserrat Ibanez Laxcurain
Exhibit 3:   Declaration of Mitch Lyman
Exhibit 4:   Declaration of Patricia Wallace-Lizama
Exhibit 5:   Declaration of Fernando de la Peña Lopez

10180752_1